IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMON BENNETT,** | : | **CIVIL ACTION NO. 1:20-CV-1183** |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **WARDEN OF LSCI ALLENWOOD,** | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner Damon Bennett, a federal prisoner presently incarcerated at the Low Security Correctional Institution at Allenwood in White Deer, Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging an institutional disciplinary decision that resulted in, *inter alia*, a loss of good time credits. (Doc. 1.) Respondent submitted an answer, (Doc. 6), and petitioner has now filed a reply, (Doc. 7). For the reasons that follow, the petition will be denied.

**I.   Background**

On Saturday, September 7, 2019, at 1:17 a.m., while he was incarcerated at LSCI Allenwood, petitioner provided a urine sample labeled with specimen identification number 0003466520. (Doc. 6 at 3.) The sample was secured in the Lieutenants' Office at LSCI Allenwood. (Id.) On Monday, September 9, 2019, the sample was sent to Phamatech Laboratory Services for analysis. (Id.)

On September 17, 2019, the Special Investigative Services ("SIS") Office at LSCI Allenwood received confirmation from Phamatech Laboratory Services that specimen 0003466520 was positive for buprenorphine. (Id. at 3-4.) On September

17, 2019, a BOP staff pharmacist submitted a memorandum to confirm that petitioner was not prescribed any medication that would cause a positive test for buprenorphine.  (Id. at 4.)

As a result of the positive urine test, an incident report was issued to petitioner by an SIS technician on September 17, 2019, at 11:39 a.m., for committing the prohibited act of "Use of Narcotics" (Code 112).  (Id. at 2, 4.)  Sections 4 and 5 of the incident report stated that the incident occurred on September 7, 2019, at 12:41 a.m.  (Id. at 2.)  The incident report was rewritten and reissued on September 18, 2019, at approximately 1:57 p.m., to reflect the time petitioner actually provided the urine sample (1:17 a.m.) rather than the time the urine sample was requested from him (12:41 a.m.) in section 5 of the report.[1]  (Id. at 2-3.)

An investigator delivered the incident report to petitioner on September 18, 2019, at 2:21 p.m.  (Id. at 5.)  The investigator advised petitioner of his rights including the right to remain silent, and petitioner stated that he understood them.  (Id.)  When provided with an opportunity to make a statement, he told the investigator that he did not have a comment.  (Id.)  The investigator provided petitioner with an opportunity to identify witnesses, which he declined to do.  (Id.)  The investigator then referred the incident report to the Unit Discipline Committee ("UDC").  (Id.)

---

[1] When the SIS technician rewrote and reissued the incident report, the technician did not update the date and time that the rewritten report was issued.  According to respondent, the technician has reviewed his records and has stated that the rewritten report was issued at 1:57 p.m. on September 18, 2019.  (Doc. 6 at 3.)  Petitioner does not appear to dispute this issue in his reply.

2

On September 20, 2019, a hearing was held before the UDC. (See id.) At the hearing, petitioner stated that, "[t]he urine samples were left unattended." (Id.) The UDC referred the charge to the DHO for disposition due to the severity of the charge. (Id.) Petitioner was then provided with notice of the DHO hearing and his rights there. (Id. at 5-6.) He signed a "Notice of Discipline Hearing Before the DHO" form in which he identified a staff representative and three inmate-witnesses. (Id. at 6.) He also signed an "Inmate Rights at Discipline Hearing" form. (Id.)

The DHO hearing was held on October 10, 2019. (Id.) At the hearing, petitioner was advised of his rights before the DHO and indicated that he understood them. (Id.) Petitioner provided the following statement: "He left the samples on the wall in the visiting room when he took us back to the unit." (Id.) He did not present any documents for the DHO to consider. (Id.) Petitioner's staff representative noted no discrepancies in the disciplinary process but did question whether the urine sample container was left unattended in the visiting room. (Id.)

Two inmate-witnesses provided testimony as requested by petitioner. (Id.) The first witness stated that he and three other inmates, including petitioner, were taken to the visiting room to provide urine samples. (Id.) The witness did not see any other inmates in the area. (Id. at 6-7.) The only staff member he saw was one officer. (Id. at 7.) After everyone provided a sample, that officer took all four inmates back to their housing units. (Id.) The second witness stated that the officer put all of the samples on the table by the bathroom and left them there when he took the inmates back to their units. (Id.)

3

Petitioner had also requested the testimony of a third inmate-witness; however, when the inmate was brought into the hearing room, he indicated that he was Spanish speaking and did not understand English. (Id.) Petitioner informed the DHO that he assumed the third witness would testify to the same information as the other two witnesses. (Id.) The DHO elected to excuse the third inmate-witness as he believed he had sufficient information regarding the provision of the urine samples from the other two witnesses. (Id.)

The DHO determined that petitioner was guilty of violating Code 112. In making his ruling, the DHO considered the incident report and investigation, petitioner's statement at the DHO hearing, the statements of the other witnesses, the memorandum dated September 17, 2019, from the SIS technician who issued the incident report, the test results from Phamatech Laboratory dated September 16, 2019, and the chain-of-custody form. (Id.) The DHO noted that the chain-of-custody form corroborated petitioner's commission of the prohibited act as set forth in section 11 of the incident report, and that it was signed by petitioner confirming all urine collection procedures were handled correctly. (Id. at 7-8.) Additionally, the DHO noted the Phamatech Laboratory report for the urine sample documented a positive result for buprenorphine, and the memorandum that confirmed that petitioner was not prescribed any medication that would have caused him to have buprenorphine in his urine sample. (Id. at 8.)

As to the potential chain-of-custody issue, the DHO noted that petitioner and both witnesses testified that the urine samples were left in the visiting room when the inmates were returned to their units and that one witness reported that no

other inmates or staff were in the area. (Id.) Given that the samples were provided at approximately 1:15 a.m., the DHO concluded that it would be it extremely unlikely that anyone would have accessed the area after the inmates were taken back to their cells. (Id.) The DHO concluded that the greater weight of the evidence supported the finding that petitioner committed the prohibited act of "Use of Narcotics" (Code 112).[2] (Id. at 8-9.)

For that violation, the DHO imposed the following sanctions: thirty days of disciplinary segregation, forty days of disallowed good conduct time, four months of loss of commissary privileges and loss of email privileges, and twelve months of loss of visitation privileges. (Id. at 9.)

**II.   Discussion**

**A.     Legal Standard**

A habeas corpus petition is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement, including challenges to prison disciplinary proceedings, that affect the length of confinement, such as deprivation of good time credits. See Preiser v. Rodriguez, 411 U.S. 475, 498–99 (1973); Muhammad v. Close, 540 U.S. 749 (2004); Edwards v. Balisok, 520 U.S. 641 (1997); Wilkinson v. Dotson, 544 U.S. 74 (2005). A challenge to a disciplinary action

---

[2] In his report, the DHO did note a delay in the disciplinary process due to the original incident report being rewritten to correct the time of the urine sample. (Id. at 9.) The DHO also noted that rewritten incident report was delivered to petitioner and investigated in a timely manner, and that the UDC hearing was also held in a timely manner. (Id.) The DHO noted that the delay did not appear to impact petitioner's ability to defend himself against the charge, nor did petitioner raise this issue at any time during the disciplinary process. (Id.)

resulting in the loss of good conduct time is properly brought pursuant to § 2241, "as the action could affect the duration of the petitioner's sentence." Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008).

**B.     Analysis**

Petitioner is challenging the result of a prison disciplinary hearing where he was found guilty of violating Code 112 for "Use of Any Narcotic," and sanctioned with the loss of forty days of good conduct time by the DHO. (Doc. 1.) In petitioner's reply, he clarifies that he is contesting the time when he received the rewritten incident report. Specifically, he alleges that BOP policy provides that an inmate should receive the incident report within twenty-four hours from the time that staff becomes aware of the inmate's alleged misconduct, and petitioner here received the rewritten incident report after that twenty-four hour period. (See Doc. 7 at 2.)

Prisoners are guaranteed certain due process protections when a prison disciplinary proceeding may result in the loss of good time credits. See Wolff v. McDonnell, 418 U.S. 539, 564-65 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. The due process protections afforded an inmate must include (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) an appearance before an impartial decision making body. See

6

Crosby v. Piazza, 465 F. App'x 168, 171-72 (3d Cir. 2012) (nonprecedential) (citing Wolff, 418 U.S. at 563-71).

Additionally, the revocation of good time only satisfies the minimum requirements of procedural due process when the findings of the prison disciplinary board are supported by "some evidence" in the record. Lang v. Sauers, 529 F. App'x 121, 123 (3d Cir. 2013) (nonprecedential) (citing Superintendent v. Hill, 472 U.S. 445, 454 (1985)). This standard is minimal and does not require an examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence. Id. (citing Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989)). The standard is simply whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. (quoting Hill, 472 U.S. at 455-56).

Petitioner was provided with all the due process safeguards identified in Wolff. Petitioner received written notice of the charges against him at least twenty-four hours prior to the hearing; he had an opportunity to call witnesses and present evidence in his defense, which he elected; he had an opportunity to receive assistance from a representative, which he elected; he appeared before an impartial decision making body; and he received a written statement of the evidence relied on and the reasons for the disciplinary action. Petitioner's argument that he received the rewritten incident report more than twenty-four hours after the incident occurred, allegedly in violation of BOP policy, is immaterial to the court's due process analysis because petitioner received the rewritten report more than twenty-four hours before his disciplinary hearing, thus satisfying Wolff.

7

To the extent that petitioner argues that the decision of the DHO was not supported by the record, the court finds that there is some evidence in the record to support the DHO's decision.  A review of the record demonstrates that the DHO relied on the incident report, the investigation, the chain-of-custody form with inmate certification for the urine sample, the lab report, and the memorandum verifying that petitioner was not prescribed any medication that would yield a positive report from his urine sample when making the decision.  The DHO also relied on the witness testimony that indicated that no other persons were left alone with the urine samples.  This combined with the lab report and memorandum certainly provides more than some evidence in the record to support the DHO's decision that petitioner violated Code 112.

Notably, this court's role is limited to determining whether "some evidence" exists in the record to support the DHO's decision; the court does not reassess the evidence, take new evidence, or evaluate witness credibility.  See, e.g., Thompson, 889 F.2d at 501 (dismissing habeas petition because "positive urinalysis results on samples that officials claim to be [the inmate's] constitute some evidence" and "independent assessment" of the urinalysis is "not required"); McGee v. Scism, 463 F. App'x 61, 62 (3d Cir. 2012) (nonprecedential) ("The 'some evidence' standard does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."); Perez v. Rectenwald, No. 12-cv-2114, 2013 WL 5551266, at *4 (M.D. Pa. Oct. 8, 2013) ("The Court's responsibility under Hill is not to weigh this evidence or assess its probative value, but merely to determine that at least some evidence exists to support the conviction").  Because

8

there is some evidence in the record to support a violation of Code 112, petitioner's due process rights were not violated, and he is not entitled to habeas relief.  See, e.g., Seymour/Jones v. Kane, No. 92-1486, 1993 WL 235919, at *4 (E.D. Pa. June 30, 1993) (finding "some evidence" in the nature of a positive urinalysis result that showed sample belonged to plaintiff to support DHO's decision despite plaintiff's allegation that sample was tampered with).

Finally, to the extent that petitioner also argues that the loss of forty days of good time credit violates the Eighth Amendment because it is "grossly disproportionate" to the severity of the offense, see Rummel v. Estelle, 445 U.S. 263, 271-74 (1980), the court notes that it is within the range of available sanctions for a violation of Code 112.  See 28 C.F.R. § 541.3; see also Shelton v. Jordan, 613 F. App'x 134, 135 (3d Cir. 2015) (nonprecedential) ("[g]iven the severity of [petitioner's] offenses, and because the sanctions fall within the applicable range permitted by the regulation, we conclude that the punishment here did not violate the Eighth Amendment").  As such, the court finds that the sanction imposed on petitioner did not violate the Eighth Amendment.

### III.     Conclusion

For the reasons set forth above, the petition will be denied.  An appropriate Order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:      April 13, 2021